UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**ROBERT SHORTESS**                                   **CIVIL ACTION**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT**          **No. 07-523-C**
**OF PUBLIC SAFETY AND CORRECTIONS,**
**ELAYN HUNT CORRECTIONAL CENTER**

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment (Doc. No. 55) filed by defendant, State of Louisiana, Department of Public Safety and Corrections, Elayn Hunt Correctional Center (EHCC). Plaintiff, Robert Shortess, has filed opposition (Docs. No. 65 & 63). Defendant has filed reply briefs (Docs. No. 69 & 71). Jurisdiction is allegedly based on federal question, 28 U.S.C. § 1331. The Court, having reviewed the record, the law, and the arguments of the parties, now concludes that the defendant's motion should be **GRANTED** for the following reasons.

## BACKGROUND

Plaintiff began working as an Investigative Officer at EHCC on July 19, 2004. The Investigative Officer position required plaintiff to interview inmates, listen to conversations of prisoner phone calls, and collect evidence. At the time of his hire, EHCC performed a physical examination on plaintiff and detected an atrial fibrillation.

Doc#1829

In October or November of 2005, plaintiff was diagnosed with prostate cancer. On December 6, 2005, following an initial consultation with his doctor, plaintiff underwent surgery for his cancer. Surgery consisted of the placement of radioactive seeds in plaintiff's prostate. Plaintiff returned to work on December 9, 2005, without requesting any alterations to his job duties.

On January 17, 2006, Assistant Warden, Raymond McNeil, discovered plaintiff asleep in his office. Plaintiff's office was unsecured and accessible by inmates. While plaintiff was sleeping, his keys, including a key to the evidence locker, were in his possession. The evidence locker contained marijuana, homemade shanks, knives, and other weapons. As a result of the sleeping incident, Warden McNeil instructed plaintiff to meet with Warden Cornel Hubert that same day. Plaintiff met with Warden Hubert and allegedly expressed his desire to resign. Warden Hubert instructed plaintiff to take a couple of days off from work. Plaintiff returned to work on January 23, 2006, and was verbally informed by Warden Hubert that he was being demoted from Major to Sergeant as a result of the January 17, 2006, sleeping incident. On January 25, 2006, plaintiff visited his oncologist, who prepared a letter noting that plaintiff had nocturia and persistent fatigue.[1] Plaintiff received an Employee Rule Violation Report ("VR-1") on January 26, 2006, citing a violation of "13F Aggravated Malfeasance" and demoting him four steps, from Corrections Major to Corrections

---

[1] See Record Document No. 58-4, p. 34, Exhibit J.

Sergeant.[2]  On the same date, plaintiff submitted a written complaint of

harassment and discrimination based on his alleged disability to the Personnel

Director.[3]  Plaintiff never returned to work after January 26, 2006.

   Plaintiff's doctor sent a letter to EHCC on February 17, 2006, requesting

two weeks of leave for plaintiff.[4]  EHCC responded by faxing plaintiff an Essential

Functions form on February 20, 2006, and placing plaintiff on Family Medical

Leave.  On March 24, 2006, plaintiff was written up for not securing leave for the

dates of March 7, 10-16, 20, and 24.  Warden Hubert prepared a "Loudermill

notice" on April 25, 2006, advising plaintiff that because of his failure to report for

duty without securing leave, he was being recommended for termination.[5]

Plaintiff's doctor returned the Essential Functions form to EHCC on May 25,

2006, noting that plaintiff could not perform eight essential functions of a security

position at EHCC.[6]  On July 7, 2006, EHCC sent plaintiff a letter noting receipt of

the Essential Functions form and informing plaintiff that due to EHCC's mission of

preserving the public safety and the nature of the work at the correctional center,

namely, the housing and long-term care of persons convicted of a felony, "EHCC

---

[2] Record Document No. 55-3, p. 30, Exhibit 10.

[3] Record Document No. 58-4, p. 36, Exhibit K.

[4] Record Document No. 58-5, p. 2, Exhibit M.

[5] **Id.** at p. 35, Exhibit R.

[6] Record Document No. 55-3, pp. 19-21, Exhibit 6.

ha[d] no correctional officer positions for which an accommodation could be made."[7]  Plaintiff was notified by letter dated July 11, 2006, that he was being terminated from his position pursuant to Louisiana Civil Service Rule 12.6(a)1, which, subject to the provisions of the American Disabilities Act ("ADA"), authorizes the non-disciplinary removal of an employee who is unable to perform essential functions of his job because of an illness or medical disability, where the employee has fewer than eight hours of sick leave to his credit and his job must be performed without further interruption.[8]

On July 19, 2007, plaintiff filed a petition with the 19th Judicial District Court in East Baton Rouge Parish, Louisiana.  The petition requested an award of damages based on defendant's alleged violations of the ADA[9] and the Louisiana Employment Discrimination Law.[10]  The case was removed to this Court due to questions of federal law.  Defendant now seeks summary judgment, alleging that plaintiff cannot establish a prima facie case of discrimination under the ADA because plaintiff is neither "disabled" or "qualified for his job." In the event that the Court finds a prima facie case of discrimination has been established, defendant contends that it has offered a legitimate non-discriminatory reason for the actions

---

[7] Record Document No. 55-3, pp. 51-53, Exhibit 19.

[8] Record Document No. 58-5, p. 34, Exhibit Q.

[9] 42 U.S.C. § 12101, *et seq.*

[10] La. R.S. 23:301, *et seq.*

taken against plaintiff and that plaintiff has failed to establish that the actions taken against him were merely a pretext for unlawful discrimination.  Finally, defendant contends that plaintiff has failed to demonstrate that EHCC has discriminated against him on the basis of his age.

## SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[11]

The party seeking summary judgment bears the initial burden of setting forth the basis for its motion and identifying the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.[12]  The moving party may discharge its burden by showing or pointing out to the court that there is an absence of evidence to support the non-moving party's case.[13]  Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence

---

[11] See Fed. R. Civ. P. 56(c).

[12] **Celotex Corp. v. Catrett**, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[13] **Id.** at 325.

of a genuine issue of fact for trial.[14]   The non-moving party must come forward with evidence which establishes each element for which that party bears the burden of proof at trial.  Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial.

## ANALYSIS

Plaintiff alleges that defendant discriminated against him in violation of the ADA by demoting him after he fell asleep at work and terminating him after he allegedly failed to report for duty without securing leave.  Defendant contends that plaintiff cannot establish a prima facie case of discrimination under the ADA because plaintiff is neither "disabled" or "qualified for his job."  Alternatively, defendant argues that it has set forth a legitimate, nondiscriminatory reason for its employment action and plaintiff has failed to offer evidence proving that defendants' reason is a pretext for discrimination.  Plaintiff disputes defendants allegations and also urges this Court, in a supplemental memorandum,[15] that the September 25, 2008, Americans with Disabilities Amendments Act (ADAAA)[16] applies to the instant case.

---

[14]   **Celotex,** 477 U.S. at 322-23.

[15]   Record Document No. 63.

[16]   Pub. L. No. 110-325, 122 Stat. 3553 (2008).

## I.  The Americans with Disabilities Amendments Act

As an initial matter, this Court finds the ADAAA inapplicable to the case at bar.  The ADAAA became effective on January 1, 2009.[17] The Fifth Circuit determined that the "changes" contained in the ADAAA "do not apply retroactively."[18] Plaintiff was allegedly discriminated against in 2006.  Therefore, the ADAAA does not retroactively apply to plaintiff's claims, and the claims will be analyzed under the pre-amendment version of the ADA.

## II. ADA Claims

The ADA provides that no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such individual in regard to, *inter alia*, "the hiring, advancement, or discharge of employees ... and other terms conditions, and privileges of employment."[19] This court recognizes a modified **McDonnell Douglas**[20] burden-shifting framework to analyze claims of discrimination under the ADA where, as here, the plaintiff relies on circumstantial

---

[17] Pub. L. No. 110-325, 122 Stat. 3553, 3559 (2008).

[18] **E.E.O.C. v. Agro Distribution, LLC**, 555 F.3d 462, 469 n. 8 (5th Cir.2009) (" 'Even when Congress intends to supersede a rule of law embodied in one of our decisions  with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear.' ") (citing **Rivers v. Roadway Express, Inc.**, 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)).

[19] 42 U.S.C. § 12112(a).

[20] **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

evidence.[21] Under this approach, the plaintiff must first make out a prima facie case of discrimination by showing that: (1) he suffers from a disability; (2) he is qualified for the job; (3) he was subject to an adverse employment action; and (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees.[22]

Plaintiff alleges that he suffered from disabilities such as prostate cancer, the cancer treatment he received in December of 2005, and heart problems consisting of a defective mitral valve, atrial fibrillation, and high blood pressure. Defendant contends that these are not disabilities recognized by the ADA. The Court need not decide this issue as the plaintiff has failed to establish the second prong of a prima facie discrimination claim, namely, that he was qualified for the job.

### (A) Plaintiff was not a "qualified individual" for ADA purposes

Pursuant to the second prong of the **McDonnell Douglas** framework, the plaintiff must show that he is qualified for the job.[23]  The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform

---

[21] See **Rachid v. Jack In The Box, Inc.**, 376 F.3d 305, 311 n. 8 & 312 (5th Cir. 2004) (following the Supreme Court's decision, after Title VII's amendment, in **Desert Palace, Inc. v. Costa**, 539 U.S. 90, 101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003)); see also **Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.**, 482 F.3d 408, 411 (5th Cir.2007).

[22] See **Norris v. Hartmarx Specialty Stores, Inc.**, 913 F.2d 253, 254 (5th Cir.1990); **EEOC v. Brown & Root, Inc.**, 688 F.2d 338, 340-41 (5th Cir.1982); **Aikens v. Banana Republic, Inc.**, 877 F. Supp. 1031, 1037 (S.D. Tex. 1995).

[23] **Id.**

the essential functions of the employment position that such individual holds or desires."[24]  "To avoid summary judgment on whether he is a qualified individual, [a plaintiff] must show 1) that he could perform the essential functions of the job in spite of his disability or 2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job."[25] The determination of whether an employee is a qualified individual must be made as of the time of the employment decision.[26]

### (a) Plaintiff Could Not Perform the Essential Functions of His Job and No Reasonable Accommodations Would Have Enabled Plaintiff to Perform these Functions

Defendant argues that, at the time of plaintiff's demotion and termination, plaintiff could not perform eight functions which are essential to a security position at EHCC.  These functions as alleged by defendant are climbing, restraining an inmate, running in the event of an emergency, standing for prolonged periods of time, carrying up to forty pounds, working up to sixteen hours, staying alert at all times, and performing shift work.  In opposition, plaintiff contends that running and restraining inmates are not essential functions of plaintiff's job as an Investigative Officer at EHCC.

---

[24] 42 U.S.C. § 12111(8).

[25] **Turco v. Hoechst Celanese Corp.**, 101 F.3d 1090, 1093 (5th Cir.1996).

[26] **Bay v. Cassens Transport Co.**, 212 F.3d 969 (7th Cir. 2000).

### (1) Defining the Essential Functions of Plaintiff's Job

Essential functions are the fundamental duties of the job at issue and do not include the job's "marginal functions."[27]  In determining what constitutes the essential functions of a position, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."[28]

On July 19, 2004, the date that plaintiff began work at EHCC, plaintiff signed a form acknowledging and confirming his ability to perform the essential functions of an EHCC "Corrections Officer" position.[29]  According to the form, EHCC believed that the essential functions of plaintiff's job consisted of (1) observing inmates to insure that they follow institutional rules and to prevent inmate activities, that may lead to escapes, assaults, and damage to property, (2) supervising inmate work crews in activities relating to construction, agriculture, groundskeeping, etc., (3) counting inmates to prevent escapes, (4) responding to emergencies to restrain inmates and to break up fights, (5) serving as a tower officer or perimeter officer with authority to shoot or wound in situations affecting

---

[27] **Kapche v. City of San Antonio**, 176 F.3d 840, 843 (5th Cir.1999) (citing 29 C.F.R. § 1630.2(n)(1)).

[28] 42 U.S.C. § 12111(8).

[29] See Record Document No. 55-3, pp. 10-13, Exhibit 4.

the public safety, (6) conducting pat down searches and shake downs of buildings for contraband materials, (7) writing reports as required by institutional policies, and (8) using force to restrain inmates, enforce institutional rules, and prevent escapes.[30]  In order to perform these functions, officers are required to climb, exert physical force to restrain an inmate, run in the event of an emergency or life threatening situation, stand for prolonged periods of time, and carry up to forty pounds.[31]

Plaintiff takes issue with the application of the essential functions required of a "Corrections Officer" to his "Investigative Officer" position at EHCC. Specifically, plaintiff contends that his Investigative Officer position required only that he interview inmates, listen to conversations of prisoner phone calls, and collect evidence – it did not require him to run or restrain inmates.  To support this proposition, plaintiff suggests that when he conducted interviews, an officer working in the area would assist him, when he met with an inmate in an interview room, there was always a guard right outside the door, and that he did not carry a weapon while working at EHCC.  Plaintiff's arguments on this issue are unavailing.

Although it may be true that EHCC Investigative Officers were not expected to have contact with inmates on a regular basis, plaintiff was well aware that he

---

[30] Record Document No. 55-3, p. 10, Exhibit 4.

[31] Record Document No. 55-3, pp. 10-11, Exhibit 4.

worked among violent offenders, that he could be called upon to perform security duties at any time, and that his ability to exert physical force to restrain an inmate or to run in the event of a security breach was crucial to protect himself, the inmates housed at EHCC, other employees, staff and visitors of EHCC, and the public at large.[32]  Considering the nature of plaintiff's work and the security risks that are inherent when working alongside inmates, it is not a mere coincidence that EHCC requires prospective officers to sign a form attesting to their physical capabilities.  Indeed, the Louisiana First Circuit Court of Appeal suggested that the ability to provide safety and security was an inherent function of plaintiff's position: "It seems axiomatic that a person working in a prison, particularly in close proximity with prisoners, who falls asleep for any length of time while on the job, *inherently* impair's the efficiency of the public service of maintaining and keeping order within a prison."[33]

The nature of plaintiff's position, the deference given to EHCC's judgment as to which functions are essential, and the written description of essential functions that interviewees for Investigative Officer positions at EHCC must sign all weigh in favor of adopting the essential functions of an EHCC "Corrections Officer" position.  Although the aforementioned functions are essential to

---

[32] Record Document No. 55-3, p. 26, Exhibit 8.

[33] **Shortess v. Department of Public Safety & Corrections**, 991 So.2d 1067, 1072 (La. App. 1st Cir. 5/28/08).

plaintiff's position, the inquiry does not end there.  This Court must now determine whether plaintiff was able to perform these functions at the time of his demotion and termination.

### (2) Plaintiff Could Not Perform The Essential Functions of His Job

On May 25, 2006, approximately four months after plaintiff's demotion and two months prior to plaintiff's termination, plaintiff and his doctor completed an "Essential Functions Form" which indicated that plaintiff could not perform eight functions which are essential to a corrections officer position at EHCC.[34]  The form specified that plaintiff could not climb, restrain inmates, run in the event of an emergency or life threatening situation, stand for more than two hours, carry up to forty pounds, work for more than eight hours, stay alert for more than eight hours, and perform shift work.[35]  Plaintiff does not contest the accuracy of the statements set forth in the form.  Therefore, no reasonable jury could find that plaintiff was qualified to perform the essential functions of his position during his demotion and termination.  Accordingly, the Court must decide whether EHCC could have provided any reasonable accommodations which would have enabled plaintiff to perform the essential functions of his job.

---

[34] Record Document No. 55-3, pp. 19-21, Exhibit 6.

[35] **Id.**

### (3) No Reasonable Accommodations Would Have Enabled Plaintiff to Perform the Essential Functions of His Job

Plaintiff alleges that he requested the following accommodations, which were denied to him, and would have allowed him to perform the essential functions of his job: Flexibility in scheduling, eight hour work days, the ability to take frequent breaks, assistance in handling inmates and running, and light duty.[36]  Defendant contends that these accommodations were unreasonable.

EEOC regulations promulgated to implement the ADA define "reasonable accommodation" as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."[37]  An employee who needs an accommodation because of a disability has the responsibility of informing his employer.[38]  In crafting the accommodation, the ADA does not require employers to modify the duties of other employees in order to provide a reasonable accommodation.[39]  Further, an employer is not required to eliminate or redistribute

---

[36] Record Document No. 55-3, p. 59, Exhibit 24, Plaintiff's Answer to Interrogatory No. 10.

[37] 29 C.F.R. § 1630.2( o)(1)(ii).

[38] **Jenkins v. Cleco Power, LLC**, 487 F.3d 309, 315 (5th Cir.2007)("[i]t is the plaintiff's burden to request reasonable accommodations").

[39] **Magnant v. Panelmatic Tex., Inc.**, No. 05-0135, 2006 WL 2434475, at *13 (S.D. Tex. Aug.22, 2006).

essential functions of a position in order to furnish an accommodation,[40] nor is an employer required to create "light duty" jobs to accommodate.[41]

Plaintiff contends that EHCC should have provided him with an assistant to handle inmates and run. This accommodation would require EHCC to either modify the duties of other employees to accommodate plaintiff or eliminate the function altogether.  Therefore, the accommodation is per se unreasonable.

Plaintiff further argues that EHCC could reassign him and "modify any of the myriad of available positions at [EHCC]."  This contention fails as well. "As reasonable accommodation cannot be made for the job he had, his employer has no duty to reassign [plaintiff] to any particular job, although it could not deny him alternative employment opportunities reasonably available under the employer's existing policies."[42]  The record clearly reflects that EHCC was more than willing to transfer plaintiff to a non-security position, that plaintiff sought only a corrections officer position at EHCC, and that no correctional officer positions were reasonably available under EHCC's existing policies.[43]  Therefore, plaintiff's requested accommodations were unreasonable under the ADA, and his ADA

---

[40] See **Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr.**, 3 F.3d 922, 925 (5th Cir.1993) (holding that "such redefinition exceeds reasonable accommodation").

[41] **Turco**, 101 F.3d at 1094.

[42] **Bradley**, 3 F. 3d at 925 (citing **School Board of Nassau County v. Arline**, 480 U.S. 273, 289, 107 S. Ct. 1131 n. 19 (1987); **Carter v. Tisch**, 822 F.2d 465, 467 (4th Cir.1987)).

[43] Record Document No. 55-3, p. 51-53, Exhibit 19.

claims must be dismissed accordingly.

## II. Age Discrimination Claims

Plaintiff contends that EHCC discriminated against him on the basis of his

age.  Defendant argues that plaintiff has not set forth a prima facie case of age

discrimination or, alternatively, that EHCC has established legitimate,

nondiscriminatory reasons for all disciplinary actions taken against plaintiff.

In **McDonnell Douglas**, the Supreme Court formulated an evidentiary

procedure for cases in which there is no direct evidence of age discrimination.[44]

Although the Court cautioned that this form is not the exclusive method of

proceeding,[45] it fits the present case and has been generally adapted to the

ADEA context.[46]  According to this framework:

> First, the plaintiff must prove a prima facie case of age discrimination. In
> [the Fifth] circuit, a prima facie case consists of evidence that a plaintiff: (1)
> was discharged; (2) was qualified for the position; (3) was within the
> protected class at the time of discharge; (4) was replaced by someone
> outside the protected class, or ... by someone younger, or ... show
> otherwise that his discharge was because of age. If the plaintiff succeeds,
> the burden of production shifts to the defendant to rebut the presumption of
> discrimination created by the prima facie case by articulating a legitimate,
> nondiscriminatory reason for its disparate treatment of the plaintiff. Finally,
> the plaintiff must prove that the defendant's reasons are pretexts for
> unlawful discrimination either by showing that a discriminatory reason more
> likely motivated the defendant or by showing the defendant's reason is

---

[44] **McDonnell Douglas**, 411 U.S. at 802, 93 S. Ct. at 1824, 36 L. Ed.2d 668 (1973).

[45] **Id.** at n. 13.

[46] **Texas Dept. of Community Affairs v. Burdine**, 450 U.S. 248, 253-6, 101 S.Ct. 1089, 1094-5, 67 L.Ed.2d 207 (1981).

Doc#1829                                    16

unworthy of credence. The plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision.[47]

For purposes of this motion the Court will assume, without holding, that plaintiff has set forth a prima facie case of age discrimination.  Therefore, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff.

Defendant stated that plaintiff was demoted because he was sleeping while working on January 17, 2006, and that, after being given the formal paperwork regarding this infraction, plaintiff failed to return to work and was therefore terminated in accordance with Louisiana Civil Service Rule 12.6(a)1.  The Court finds that defendant's proffered reasons are legitimate and nondiscriminatory reasons for demoting and firing plaintiff.  First, EHCC did not hire plaintiff until he was 67 years old.  Second, plaintiff does not dispute the fact that he was found sleeping during work hours and that this was a direct violation of EHCC's policies. Third, plaintiff has produced no evidence showing that, at the time of his termination, he had more than eight hours of sick leave or that his job did not need to be performed without interruption (i.e., that his demotion was not in accordance with Louisiana Civil Service Rule 12.6(a)1).

Once defendant has articulated a legitimate, nondiscriminatory reason for

---

[47] **Bienkowski v. American Airlines, Inc.**, 851 F.2d 1503, 1504-05 (5th Cir.1988) (citations and footnote omitted).

its disparate treatment of the plaintiff, the burden then shifts to the plaintiff to prove that the employer's reasons are pretexts for unlawful discrimination.[48]  An employee may prove that an employer's reasons are pretexts for unlawful discrimination either by showing that a discriminatory reason more likely motivated the defendant or by showing the defendant's reason is unworthy of credence.[49]

Plaintiff relies on two statements allegedly made by defendant to support an inference that age discrimination played a role in his demotion and termination: (1) Warden McNeil told plaintiff to retire or be fired, and (2) an EHCC employee told plaintiff "I didn't think you were that old."[50]  In support of plaintiff's proposition that these statements are sufficient to uphold liability under the ADEA, plaintiff cites **Palasota v. Haggar Clothing Co.**, 342 F.3d 569 (5th Cir. 2003) and **Machinchick v. PB Power, Inc.**, 398 F.3d 345 (5th Cir. 1/24/05).  Plaintiff's reliance on these cases is misplaced, however.  In **Palasota** and **Machinchick**, the Fifth Circuit relied on both a pattern of action undertaken by the employers to eliminate elderly employees and statements made to those employees to support its conclusions that the plaintiffs in those cases were terminated based upon their age.  In the instant case, plaintiff has offered no evidence that would indicate that

---

[48] **Bienkowski,** 851 F.2d at 1505.

[49] **Id.**

[50] Record Document No. 65, p. 38.

EHCC had devised or implemented a plan intended to assemble a younger workforce and eliminate the elderly.

Additionally, even assuming, *arguendo*, that discriminatory statements could alone form the basis of ADEA claims, the Court finds that the statements made to plaintiff suggest no discriminatory animus whatsoever.  The first statement was communicated to plaintiff by Warden McNeil after plaintiff was found sleeping at work.  After the incident, Warden McNeil suggested that plaintiff retire rather than be fired and asked plaintiff whether termination was "how [plaintiff would] want to end [his] law enforcement career."[51]  Reasonably interpreted, this statement was made to express Warden McNeil's concern that plaintiff should retire rather than face the humiliation of disciplinary action for sleeping while at work.  No reasonable juror could find otherwise.  Additionally, plaintiff himself admitted that he did not interpret the statement "I didn't think you were that old" as "any kind of age remark or anything."[52]

Under the foregoing facts, no reasonable juror could find that EHCC's decisions to demote and terminate plaintiff were pretexts for unlawful discrimination.  Therefore, plaintiff has failed to meet his burden of proof, and his age discrimination claims must be dismissed.

---

[51] Record Document No. 58-3, p. 33, Exhibit C.

[52] Record Document No. 51-3, Exhibit 1, pp. 48-49.

Accordingly, for the foregoing reasons assigned,

IT IS ORDERED that defendant's Motion for Summary Judgment (Doc. No. 29), dismissing plaintiff's ADA and age discrimination claims, is **GRANTED**.

Baton Rouge, Louisiana, this 1st day of July, 2010.

RALPH E. TYSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Doc#1829                                    20